# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CLEO HUNTER,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

______________________________________/

Case No. 1:26-cv-03859-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Cleo Hunter ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

On April 17, 2023, Plaintiff filed a claim for DIB payments, alleging he became disabled on April 1, 2022, due to respiratory disorder to his lungs, congestive heart failure or chronic heart

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

failure, and hypertension. (Administrative Record ("AR") 17, 57, 64, 90, 100, 222, 262, 273.)

Plaintiff was born in 1961 and was 60 years old on the alleged onset date. (AR 25, 57, 64.) He has at least a high school education and has past work as a field supervisor for an oil rig company. (AR 24, 25, 38, 51, 223, 248.)

**A. Relevant Evidence of Record[3]**

**1. Medical Evidence**

In December 2022, Plaintiff presented to Omni Family Health with right-side rib pain and bilateral leg pain and swelling. (AR 351–56.) On examination, Plaintiff was noted to be morbidly obese with edema in his lower legs, but otherwise with normal results, including normal respiratory inspection, auscultation, and effort; and regular heart rate and rhythm with no murmurs, rubs, or gallops. (AR 355.) His medication for high blood pressure was refilled. (AR 352, 356.)

Plaintiff complained of an allergic reaction that next month. (AR 364–69.) His physical examination was normal as before. (AR 367.) In March 2023, Plaintiff complained of shortness of breath on exertion. (AR 370–75.) It was noted that he was seen by cardiology with "no significant findings." (AR 370.) Plaintiff's physical examination was normal, with normal respiratory inspection, auscultation, and effort; and regular heart rate and rhythm with no murmurs, rubs, or gallops. (AR 373.) A chest x-ray performed that same month was "unremarkable," with "no evidence [of] acute pulmonary pathology." (AR 383.)

In May 2023, Plaintiff complained of intermittent lower leg swelling. (AR 376–81.) It was noted that he had been seen by cardiology in the past with normal ejection fraction. (AR 376.) On examination, Plaintiff's results were normal as before. (AR 379.) Plaintiff's lower leg edema was noted to be "resolved at this time," and he was advised to elevate his lower extremities. (AR 380.)

Plaintiff presented for a comprehensive internal medicine evaluation with Roger Wagner, MD, in October 2023. (AR 402–407.) The examination showed regular heart rate and rhythm, with no extra sounds or murmurs heard. (AR 404.) Plaintiff's lungs were symmetric with normal excursions and clear to auscultation throughout. (AR 404.) Straight leg raising test was negative,

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

and Plaintiff had a normal knee examination, grossly intact sensation to light touch and pinprick, normal reflexes, normal gait and station, normal finger-nose, and the ability to walk on toes and heels. (AR 404–405.) Regarding Plaintiff's complaint of shortness of breath on exertion, Dr. Wagner observed that Plaintiff had been "ruled out for any significant cardiologic problems" and had not been told he had congestive heart failure. (AR 405.) He noted that Plaintiff has not had a formal pulmonology workup, his lungs sound "fairly clear" and do not have any characteristic sounds of fibrosis, and he may "simply be deconditioned" due to being "fairly obese." (AR 405.) With respect to Plaintiff's hypertension, Dr. Wagner observed that Plaintiff had "no obvious end organ damage." (AR 405.)

**2. Plaintiff's Statement**

In September 2023, Plaintiff completed a pain questionnaire. (AR 233, 236–37.) He stated that his legs swell from his feet to his knees, and he must elevate his legs. (AR 233.) He endorsed severe burning and itching pain every day depending on how long he stands. (AR 233.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on November 16, 2023, and again on reconsideration on January 16, 2025. (AR 86–90, 97–100.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 101–46.) At the hearing on August 19, 2025, Plaintiff appeared by telephone with counsel and testified before an ALJ as to his work history and alleged disabling conditions. (AR 38–50.) A Vocational Expert (VE) also testified at the hearing. (AR 50–54.)

**1. Plaintiff's Testimony**

Plaintiff testified that he cannot work because he has shortness of breath, he cannot stand long, and he can only walk one block before needing to rest. (AR 40.) According to Plaintiff, the last time he visited Omni Family Health was in May 2023, and he's been receiving only medication refills since then. (AR 42.) He testified that he had high blood pressure about six to eight months prior to the hearing and went to the emergency room at Kern Medical Center for injections. (AR 42–43.)

Plaintiff testified that he could work in his garage, do some laundry and dusting with breaks,

play with his dog, and make simple meals. (AR 43–44, 45.)

**2. Vocational Expert's Testimony**

The VE testified that Plaintiff had past relevant work as a field supervisor, oil well services, Dictionary of Operational Titles (DOT) code 930.131-010, with a light exertional level (medium as performed) and a specific vocational preparation (SVP)[4] of 7. (AR 51.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience. (AR 51.) The VE was also to assume this person can perform medium exertional work and only occasional climbing of ramps, stairs, ladders, ropes, or scaffolds. (AR 51.) The VE testified that such a person could perform Plaintiff's past work, as well as other jobs in the national economy such as window cleaner, DOT code 389.687-014, with an SVP of 2; floor waxer, DOT code 381.687-034, with an SVP of 2; and wall cleaner, DOT code 381.687-026, with an SVP of 2. (AR 51–52.) The VE further testified that past work would remain even when adding the limitation of not being exposed to pulmonary irritants (*e.g.*, dust, fumes, gases) on a frequent basis. (AR 52.) According to the VE, other jobs in the national economy that such a person could perform are hand packager, DOT code 920.587-018, with an SVP of 2; hospital food service worker, DOT code 319.677-014, with an SVP of 2; and patients transporter, DOT code 355.677-014, with an SVP of 2. (AR 52.) The VE testified that a requirement of three additional 15-minute breaks would be work preclusive. (AR 53.)

Plaintiff's attorney asked the VE to consider the first hypothetical with an additional limitation of no more than four hours standing and walking. (AR 53.) The VE testified that such limitation would eliminate both past work and the other jobs identified. (AR 53.) The VE further testified that absenteeism of two days a month on a consistent basis would be work preclusive. (AR 53.)

**C. The ALJ's Decision**

In a decision dated September 17, 2025, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–27.) The ALJ conducted the five-step disability analysis set forth in 20

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

C.F.R. § 404.1520. (AR 19–27.) The ALJ decided that Plaintiff last met the insured status requirements of the Act on December 31, 2023, and he had not engaged in substantial gainful activity during the period between April 1, 2022, the alleged onset date, through the date last insured of December 31, 2023 (step one). (AR 19.) At step two, the ALJ found Plaintiff's obesity to be severe through the date last insured. (AR 19–21.) The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") through the date last insured (step three). (AR 22.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC through the date last insured:

> to perform medium work as defined in 20 CFR [§] 404.1567(c) and SSR 83-10 (e.g., lift and/or carry 50 pounds occasionally and 20 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday), except that he can occasionally climb ramps, stairs, ladders, ropes, or scaffolds (20 CFR [§] 404.1520(e)).

(AR 22–24.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 23.)

Based on the RFC assessment, the ALJ determined that Plaintiff could perform his past relevant work as a field supervisor, oil well services (step 4). (AR 24.) The ALJ also made the

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

alternative finding that Plaintiff could perform a significant number of other jobs in the national economy (step five). (AR 25–27.) The ALJ concluded Plaintiff was not disabled at any time from April 1, 2022, the alleged onset date, through December 31, 2023, the date last insured. (AR 27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 13, 2026. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints. (Doc. 11, 13.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 12.) The Court finds no harmful error in the ALJ's decision and will affirm.

### A. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

> inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 23.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the Court finds that the ALJ identified at least three valid reasons for discrediting Plaintiff's symptom testimony:

**1. Objective Medical Evidence**

First, the ALJ found that Plaintiff's allegations of disability due to difficulty standing and walking are not consistent with the normal examination findings in the record. (AR 23.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680, 681; *see Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600

(9th Cir. 1999). *See also Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (When objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original) (collecting cases). Here, the ALJ observed that Plaintiff's medical records from his treatment providers at Omni Family Health documented examinations within normal limits. (*See* AR 23(citing AR 351–96).) The ALJ also cited the consultative examination of Dr. Wagner, which similarly showed normal cardiovascular and respiratory examination, as well as negative straight leg raising, normal knee examinations, grossly intact sensation to light touch and pinprick, normal reflexes, normal gait and station, normal finger-nose, and the ability to walk on toes and heels. (*See* AR 23 (citing AR 402–408).)

Plaintiff does not dispute this evidence, which is supported by the record. Nor does he contest the ALJ's conclusion that it undermines his allegations of debilitating impairments. The Court therefore finds that the ALJ's discrediting of Plaintiff's subjective symptom testimony on the basis of the objective medical evidence is a clear and convincing reason supported by substantial evidence in the record. *See, e.g., Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations).

**2. Extent of Treatment**

Next, the ALJ found that the extent of Plaintiff's treatment "is an indication that his symptoms are not as significant as alleged." (AR 23.) "An ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Specifically, the ALJ observed that Plaintiff "had not been seen at Omni Family Health since 2023 and has only been getting medical refills." (AR 23.)

Plaintiff asserts that the record is "ambiguous" regarding the extent of his treatment, thereby triggering the ALJ's duty to develop the record. (Doc. 11 at 6–8.) However, while the ALJ did acknowledge at the hearing that there might be records outstanding from another Omni Family Health location, they kept the record open for 14 days after the hearing to allow for those (and other)

records to be obtained by counsel. (AR 37, 47, 49–50, 55.) No additional records from Omni Family Health or any other provider were received. As the Ninth Circuit explained, the duty to develop the record may be discharged in several ways, including "keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Because the ALJ held the record open for the submission of additional records by counsel, such duty was discharged. *See id.*; *see also Mojarro v. Berryhill,* 746 F. App'x 672, 675 (9th Cir. 2018) ("The ALJ fulfilled his duty to develop the record by leaving the record open for Mojarro to submit additional evidence after the hearing."); *Bryant v. Berryhill*, No. 2:16-cv-01607-RFB-CWH, 2018 WL 5723932, at *4 (D. Nev. Oct. 31, 2018) ("[T]he ALJ discharged his duty to supplement the administrative record even if it were ambiguous or inadequate at the time of the hearing by ordering that the administrative record remain open for two weeks after the hearing."). The Court therefore concludes that the ALJ's reliance on the limited extent of Plaintiff's treatment beyond medication refills to discount his subjective symptom testimony is supported by substantial evidence. *See Bunnell*, 947 F.2d at 346.

**3. Reported Activities**

Finally, the ALJ determined that Plaintiff's testimony that he worked in his garage, did some laundry and dusting, played with his dog, and made simple meals was inconsistent with his subjective symptom testimony. (AR 23.) A claimant's level of activity may support an ALJ's determination to give less weight to their subjective statements. When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). In addition, the Ninth Circuit determined that a claimant's activities may be used to support an adverse credibility determination where the capabilities contradict the severity of the symptoms reported. *See, e.g., Valentine*, 574 F.3d at 693; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Thus, the Ninth Circuit determined a claimant's level of activity can form the basis for an ALJ to discount subjective statements where: (1) the activities contradict a claimant's testimony or (2) the level of activity

"meet[s] the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff does not dispute he performed these activities. Instead, he asserts that "nothing in the aforementioned activities demonstrate an ability to stand [and] walk at least 6 hours in an 8-hour workday, as required to perform his past work or the alternative medium work identified by the ALJ." (Doc. 11 at 8.) But the Ninth Circuit has indicated that there are "***two*** grounds for using daily activities to form the basis of an adverse credibility determination." *Orn*, 495 F.3d at 639 (emphasis added). "When an ALJ finds the claimant's level of activities contradicts their testimony, the ALJ is not required also to find that the level of activity is transferable to work." *Valdez v. Bisignano*, No. 1:24-CV-0026 JLT EPG, 2025 WL 2330229, at *6 (E.D. Cal. Aug. 13, 2025). "Rather, these are separate considerations." *Id. id.* (citing *Orn,* 495 F3d at 639); *see also Stubbs-Danielson*, 539 F.3d at 1175 ("where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment); *Valentine*, 574 F.3d at 693 (finding the ALJ identified "a clear and convincing reason to reject [the claimant's] subjective testimony" where the level of activity "contradicted [his] contentions about how debilitating his fatigue was").

Here, the ALJ reasonably concluded, based on substantial evidence in the record, that Plaintiff's activities contradicted his allegations of disabling limitations due to difficulty standing and walking (AR 23). *See, e.g., Kaufmann v. Kijakazi*, 32 F.4th 843, 851–52 (9th Cir. 2022) ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."). Contrary to Plaintiff's assertion, the ALJ was not required also to find that his activities equated with the performance of full-time medium exertional work. *See Valdez*, 2025 WL 2330229, at *6 ("As the magistrate judge found, 'the ALJ made a reasonable determination that Plaintiff's daily activities, as reported in her physical therapy and other post-surgical treatment records, were inconsistent with her hearing testimony.' Plaintiff's objection that the ALJ was also required to find her activities rose to the level of transferable to work is unsupported by established law.") (internal citations omitted).

In sum, the Court finds that the ALJ provided at least three clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of his impairments.[6]

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **August 27, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

[6] Even if the ALJ had erred in evaluating his subjective symptom testimony, however, Plaintiff has not shown such error would be harmful. Despite bearing the burden of proving his disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), Plaintiff does not specify what additional functional limitations resulting from his alleged symptoms were not accounted for in the ALJ's RFC assessment or otherwise identify how such error would not be inconsequential to the ultimate nondisability determination. *See McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). *Cf. Ruth F., v. Comm'r of Soc. Sec.,* No. C20-5603-MAT, 2021 WL 3772067, at *5 (W.D. Wash. Aug. 25, 2021) ("[A]ny error in the ALJ's evaluation of Plaintiff's subjective testimony would be harmless because the ALJ accounted for Plaintiff's alleged exertional limitations in the RFC.").